Jessica A. Wilkes (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
jaw@federmanlaw.com

Nicholas Andrew Hall (admitted *pro hac vice*)
**Hall Attorneys, PC**
P.O. Box 1370
Edna, Texas 77957
Telephone: (713) 428-8967
nhall@hallattorneys.com

*Attorneys for Plaintiff and the Proposed
Educator Track 3 Classes*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **IN RE: INSTRUCTURE DATA BREACH LITIGATION** | Case No. 2:26-cv-00374-RJS-CMR<br><br>**PLAINTIFF FARAH L. VALLERA'S STATUS REPORT REGARDING TRACK 3 AND THE EFFICIENCY OF A SEPARATE INTERIM LEADERSHIP STRUCTURE**<br><br>District Judge: Robert J. Shelby |

Counsel Jessica A. Wilkes on behalf of Plaintiff Farah L. Vallera and the proposed Educator Track 3, submit this Status Report pursuant to Case Management Order No. 1, which directs counsel to report by August 5, 2026, whether Plaintiffs have reached consensus on the need for a separate track for individuals that used Canvas' Free-For-Teacher ("FFT") platform (*i.e.*, Track 3) and, if so, whether a separate leadership structure is likely to increase efficiency. (ECF No. 125 at 2). This report addresses the need for a distinct FFT track, the efficiency of separate Track 3 leadership, and a coordinated procedure consistent with the Track 1 status report.

The undersigned counsel conferred with Plaintiffs' counsel for Tracks 1 and 2. Counsel for Track 2 agree that the creation of Track 3 would be an efficient method for the prosecution the distinct claims asserted in the Vallera Complaint (*Vallera v. Instructure, Inc.*, Case No. 2:26-cv-00652 (D. Utah) (ECF No. 1). Undersigned counsel also met and conferred via Zoom with Track 1 Plaintiffs' counsel on July 29, 2026, with all but one of the attorneys in attendance stating they were unopposed to the creation of Track 3. Undersigned counsel subsequently met and conferred with that attorney requesting additional information on August 5, 2026. Following that discussion, that counsel now does not oppose a Track 3. As set forth herein, a separate track and separate counsel are appropriate to protect the interests of the FFT users—who bring distinct legal claims and seek different remedies separate and apart from Tracks 1 and 2.

A separate leadership structure for Track 3 will increase efficiency by allowing counsel to focus on the distinct claims of the FFT users. To date, the only FFT Complaint filed is by the undersigned counsel. The undersigned have researched the distinct issues, been retained by multiple clients, identified the expert witnesses, spoke up for the FFT Plaintiffs at the status hearing and coordinated meet and confer calls with various Plaintiffs' counsel from Track 1 and Track 2 to discuss coordination of the Tracks for the most efficient prosecution of the three distinct claims. The undersigned plan to file, if necessary, a leadership motion for Track 3 on or before the Court's August 14, 2026 deadline for Track 1 applications.

## I.    INTRODUCTION

Track 3 is a narrow, a direct-account-holder track for natural persons who maintained direct Canvas Free-for-Teacher accounts, created or stored identifiable educational content in that separate product environment, and suffered direct, nonduplicative injury from Instructure's FFT-

2

specific shutdown, notice, retention, export, and migration decisions. It does not encompass every faculty member or educator who used an institution-managed Canvas account, and, therefore, does not overlap with Tracks 1 and 2. Recently, Instructure publicly represented that FFT supported approximately 76,000 teachers worldwide and more than 2.1 million courses; the precise United States class population and class size for Track 3 is currently unknown to Plaintiffs, but the information concerning the size and scope of the class is maintained in Instructure's account and export records.

Before the Data Breach, FFT operated as a separate direct-to-educator product intended for individual K-12 and higher-education educators. Some FFT users also held institutional roles, but their FFT accounts were separate from institution-managed enterprise accounts and single-sign-on environments. FFT users created and stored course shells, modules, assessments, files, and other professional content that they may personally own or control. After the incident, Instructure permanently discontinued ordinary FFT access and replaced it with two short export windows.

Counsel for Plaintiff Vallera have already established a need for a separate track and counsel and have made progress obtaining relief for the proposed Track 3 class members. Initially, Instructure only provided FFT users with a single, brief export window to collect all of their intellectual property stored on the FFT platform *or* be forced to pay for access to their property and other services on Canvas' new, upcoming platform. Despite the severity of the situation and FFT user's immediate needs and rights to access their intellectual property, Instructure did not provide FFT users with proper notice of this brief download window. It wasn't until counsel for Plaintiff Vallera stepped in that Instructure provided FFT users with the second opportunity to export their work product. FFT users' ability to access their intellectual property are still at issue

3

as many have not been properly notified of their ability to download their property or provided adequate time and support to do so—among other things.

Track 3 seeks to manage the direct-account, content-access, contract, export, and professional-loss claims arising from that separate product—not ordinary privacy claims belonging in Track 1 or institutional losses belonging in Track 2. These issues are distinct from the other tracks. Therefore, a separate Track 3 for the FFT users and separate counsel is necessary and appropriate to protect the interests of the FFT users and efficiently and effectively litigate their claims against Instructure.

## II.    ARGUMENT AND AUTHORITY

### 1.  Track 3 Presents Distinct Claims, Defenses, Proof, and Adjudicative Record

A separate Track 3 is necessary to represent and efficiently litigate the direct and narrow issues that the FFT users seek to resolve in this litigation as Track 3 presents separate and distinct issues that differ from those in Tracks 1 and 2.

### 2.  The Second Export Window Confirmed a Continuing FFT-Specific Controversy

After Plaintiff Vallera's counsel filed a suit on her behalf, Instructure reacted by providing FFT users with a second and "final" export window wherein FFT users could (purportedly) download their intellectual property from the FFT platform. Originally, Instructure announced that it would only provide one download opportunity, which did not include any support features or direct notice to the FFT users. Upon receiving a demand letter from Plaintiff Vallera's counsel, Instructure announced a second export opportunity, which has now passed. These brief export opportunities still failed to provide FFT users with adequate relief, support, and means to obtain

their intellectual property and course work before the upcoming fall semester. As such, Track 3 represents a continuing FFT-specific controversy.

Instructure publicly described the second window as a "final" opportunity to access FFT, from 12:00 a.m. ET on July 28 through 11:59 p.m. ET on July 29, 2026. Instructure stated that support functionality would remain off, while the FFT database and application server would remain segregated behind a dedicated firewall and monitored throughout the window. Before the window, an Instructure representative stated that email notice had been directed to instructors active in FFT within the prior year, while another representative acknowledged that the validated list could not achieve 100% delivery success.

During the first hours of the July window, users publicly reported heavy-load and HTTP errors, completed exports whose download links returned "Page Not Found," and inability to download course files. Instructure representatives later acknowledged that many users experienced errors, stated that an export issue had been fixed, and extended access by 12 hours, through 11:59 a.m. ET on July 30. Those events show that the FFT controversy remained operational and time-sensitive even after a second recovery attempt; they also create discrete account, notice, authentication, export, support, and cure issues not shared by Tracks 1 or 2.

Instructure's own export instructions further state that the standard course package is not a complete account-level return: it excludes student submissions, gradebook records, discussion comments, active user enrollments, and LTI configurations, and Canvas does not support course exports exceeding 20 GB. A successful download therefore may mitigate some injury without resolving whether all account-linked material was returned, whether an export was complete and usable, or whether completed loss-of-use and reconstruction damages remain.

Track 3 alleges a relationship and damages which are distinct from those asserted in Track 1. Track 1 principally alleges that threat actors acquired or exposed users' personal information and messages. Track 3 does not depend on proving that the threat actors took the educators' course content. Rather, Track 3 focuses on Instructure's conduct in limiting and obstructing individual teacher's and educator's access to their intellectual property stored on the FFT portal. Moreover, unlike the individuals represented in Track 1, Track 3 members have a separate, direct contractual relationship with Instructure.

Track 3 is also distinct from Track 2. Track 2 concerns schools, districts, colleges, and universities asserting enterprise-contract claims, service-level remedies, institutional IT and cybersecurity costs, payroll or productivity losses, and other damages belonging to the contracting institution. Track 3 excludes those institutional losses and covers only personally owned or possessed educator content, uncompensated and unreimbursed recovery or reconstruction work, substitute-platform expenses, and direct professional or business interruption. This boundary prevents overlap and double recovery while protecting claims that neither of the other tracks has an incentive or mandate to develop.

Track 3 is more likely than the other tracks to produce an earlier partial or complete resolution on a narrower record. The principal issues can be tested through discrete FFT materials: historical terms and assent records, account and course databases, individualized-notice records, authentication and export logs, content-retention evidence, and the results of the recovery windows. The July window itself demonstrates both sides of that efficiency point: Instructure was able to deploy a technical fix and extend access within hours, while the reported failures can be evaluated through a compact operational record. The remaining issues may be resolved through a

targeted recovery protocol, focused class-certification and summary-judgment proceedings, or an early track-specific settlement without delaying the broader breach litigation.

Multi-track management is consistent with analogous data-breach proceedings. PowerSchool uses an Individual User Track and a School Direct Actions Track, reflecting its two principal claimant relationships. *See In re PowerSchool Holdings, Inc. & PowerSchool Group, LLC Customer Security Breach Litigation*, No. 3:25-md-03149-BEN-MSB, ECF No. 435, at 3 (S.D. Cal. Mar. 18, 2026). Instructure adds a third relationship through FFT: educators who contracted directly with Instructure, stored professional content under FFT-specific terms, and were subjected to a separate product shutdown and export process. Courts have recognized three or more tracks where one breach generated materially different relationships and harms. *See In re Wawa, Inc. Data Security Litigation*, No. 2:19-cv-06019-KBH, 2021 WL 1910887, at *1, *7 (E.D. Pa. May 12, 2021) (Consumer, Employee, and Financial Institution Tracks); *In re Marriott International, Inc., Customer Data Security Breach Litigation*, MDL No. 19-md-2879, 2021 WL 2401641, at *1 (D. Md. June 11, 2021) (five tracks).

The need for separate representation is structural and for efficiency. Track 1 rationally will prioritize the largest privacy cohort, identity-risk relief, and academic disruption. Track 3 must prioritize preservation, account access, complete export, FFT-specific terms and waiver issues, and valuation of educator-owned content. A global settlement could otherwise release FFT-specific rights without separately valuing the content, professional-loss, and equitable-relief claims. Separate interim leadership prevents that conflict while preserving unified management of common issues.

### a. Independent Contractual Relationship and FFT-Specific Defenses

FFT users opened direct accounts with Instructure and are allegedly subject to FFT-specific terms. Instructure has already invoked FFT provisions concerning user-content ownership, service termination, liability limitations, and a class-action waiver in response to Plaintiff Vallera's demand letter. These FFT-specific terms require separate development of historical sign-up screens, term versions, revision notices, assent records, scope, enforceability, and application to prospective return or preservation relief. They are not common to Track 1 users and do not arise in the same form in Track 2. As such, a third track for FFT users is necessary to litigate these distinct issues.

### b. Different Summary-Judgment and Merits Record

Track 3 summary judgment is likely to turn on FFT-specific documentary and technical evidence: the operative terms and assent, ownership or possessory rights in identifiable course content, whether content remained preserved and exportable, the adequacy of notice and recovery windows, account-level authentication and export results, and Instructure's post-incident control over return of the content. Track 1 will focus principally on threat-actor access, data exposure, standing, privacy injury, and mitigation. Track 2 will focus principally on enterprise contracts, service levels, causation, and institutional losses. Combining those records under one substantive leadership team would not simplify dispositive motion practice. Rather, the proposed class of FFT users will be better served by a separate track and separate counsel who are focused on obtaining FFT-specific evidence and information.

### c.  Different Damages, Class-Certification Issues, and Experts

Unlike the data privacy damages and contractual monetary damages sought under Tracks 1 and 2, Track 3 seeks damages that are specific and applicable only to FFT users. Track 3 damages include completed loss of use of course content, reasonable reconstruction and migration costs, substitute-platform expenses, uncompensated professional time, and business interruption for independent educators, adjuncts, tutors, trainers, consultants, and curriculum developers. These damages differ from Track 1 privacy, identity-risk, and academic harms and from Track 2 institutional contract, payroll, and IT losses. Track 3 expressly excludes employer-paid salary, employer-owned content, reimbursed expenses, and institutional damages.

Class certification for Track 3 will also differ from Tracks 1 and 2. Track 3 certification will require a separate analysis of direct-account status, common or identifiable FFT term versions, the class waiver, uniform recovery windows, centralized account and export records, content ownership, and objective damages tiers. Its expert record will require specialized testimony concerning Canvas and FFT architecture, course-export completeness, LMS migration, digital-content preservation, course reconstruction, and professional-use damages. General cybersecurity experts may be shared across tracks, but those FFT-specific experts and issues would not otherwise be central to Track 1 or Track 2. As such, FFT users' interests are best protected under a separate Track 3 and separate counsel.

### d.  Distinct Procedural and Substantive Issues

Track 3 presents procedural and substantive issues which are distinct from Track 1 and 2. These issues included, but are not limited to:

(1) which FFT terms, account-creation interfaces, revision notices, and assent records govern, and whether any class-action waiver, liability cap, jury waiver, or damages exclusion applies;

(2) whether Instructure's own post-incident shutdown, retention, notice, and export decisions deprived direct account holders of access to identifiable user-owned content, regardless of whether the threat actors acquired that content;

(3) whether FFT content remained preserved, complete, and technically exportable; whether users authenticated successfully; and whether any export was incomplete, corrupted, or omitted course components;

(4) whether the proposed classes satisfy Rule 23 based on direct-account status, uniform recovery windows, centralized records, common or identifiable term versions, common waiver issues, and objective content and damages criteria;

(5) the measure of completed loss-of-use, reconstruction, migration, substitute-platform, uncompensated professional-time, and business-interruption damages, while excluding institutional, compensated, reimbursed, and duplicate losses;

(6) the need for FFT-specific experts concerning LMS architecture, course-export completeness, digital-content preservation, migration, reconstruction, and professional-use damages, in addition to shared common cybersecurity experts;

(7) a separate and potentially earlier summary-judgment record concerning terms, assent, ownership, notice, retention, export, waiver, and post-incident conduct; and

(8) whether targeted preservation, account-level disclosure, server-side export, a post-window cure process for incomplete or failed exports, or other injunctive relief remains necessary and whether Track 3 can be resolved earlier through a focused protocol or settlement.

### 3. Track 3 Is Likely to Be Resolved Earlier Than the Other Tracks

Track 3's threshold questions are discrete and operational: what content exists, which account holders received effective notice, who successfully authenticated and exported, whether the standard export was complete and usable, what the operative FFT terms and assent records show, and whether incomplete or failed exports can be cured. The second window produced a focused record of access and download failures, a deployed fix, and a 12-hour extension. Once limited threshold information is produced, the Court and parties can assess prospective relief, class scope, the waiver defense, and damages using a substantially smaller record than the broader privacy and institutional cases will require.

Track 3 therefore may be resolved sooner through a stipulated recovery protocol, focused mediation, early class-certification or summary-judgment proceedings, or a track-specific settlement. Separate management allows that resolution to occur without waiting for every Track 1 standing and privacy issue or every Track 2 contract and institutional-damages issue, and without delaying those tracks if Track 3 resolves first.

To ensure proportionality, the Court may make the Track 3 appointment interim and review it after production of threshold FFT account, notice, terms, retention, and export information. If the record later shows that separate management is no longer useful, the Court may narrow, merge, or sunset the track. That reviewability captures the immediate efficiency benefit without creating unnecessary permanent structure.

### 4.  A Focused Leadership Structure Will Increase Efficiency

The interest of Track 3 class members will best be served under separate counsel who are dedicated to their cause. Because Track 3 raises separate issues of fact and law, seeks relief that substantially differs from the relief sought in Tracks 1 and 2, and make resolve sooner than the other tracks, a focused leadership structure will increase the efficiency of Track 3 and ensure that Track 3's class members' interests are protected throughout the litigation.

Track 3 counsel can assign discrete common-benefit work later under any protocol the Court approves. The active preservation, export, authentication, and recovery controversy requires decisions on a compressed schedule and a quick, nimble response. A separate leadership structure creates clear accountability and maximizes efficiency and economy.

Track 3 Co-Lead Counsel would control Track 3 pleadings, discovery, expert work, dispositive briefing, class certification, and settlement. Track 3 Liaison Counsel would manage local practice and administrative coordination with the Court and other tracks.

Track 1 is a substantially larger and more administratively complex constituency, and routing time-sensitive FFT access, preservation, and export issues through Track 1 would undermine the efficiency that separate Track 3 leadership is intended to achieve. Track 3 should have a liaison independent of Track 1.

In this case, Counsel for Plaintiff Vallera have already shown the need for separate counsel for Track 3. Counsel for Plaintiff Vallera, the FFT representative, investigated the shutdown and recovery process, assembled the notice, support, sales, and second-window record, analyzed the FFT-specific terms and waiver, and formulated the proposed content-preservation, export, damages, and class framework. Counsel for Tracks 1 and 2 have not similar steps for FFT users—

nor should they, as the interests of the majority of their proposed class members are better served elsewhere.

Counsel for Plaintiff Vallera intend to file a formal leadership motion on or before the Court's August 14, 2026 deadline which will set out the proposed leadership structure and the roles and responsibilities for the proposed leads.

### a.  Integrated One-Case, Three-Track Structure

Track 3 does not seek a separate docket, a separate common-fact case, or duplicative motion practice. Consistent with Case Management Order No. 1, all three tracks should proceed in one consolidated action. Absent leave of Court, each court-ordered event may likewise generate one coordinated filing, with each track drafting and controlling its track-specific section. That filing protocol does not require a global liaison; the separate track liaisons can designate filing counsel for each submission by agreement or pursuant to a case-management order.

The same coordinated structure can apply to motions to dismiss, discovery-stay briefing, common protective-order and ESI issues, and other case-wide matters. A filing may contain a common section followed by Track 1, Track 2, and Track 3 sections. Track 3's separate liaison would coordinate directly with the other liaisons while retaining responsibility for FFT-specific deadlines and issues. This avoids repetitive background and inconsistent positions without subordinating Track 3 to Track 1 or 2's larger leadership process.

Common incident discovery—including forensic reports, the incident chronology, ransom-related evidence, general cybersecurity controls, privilege disputes, and common corporate witnesses—should be coordinated once for all tracks. Track 3 leadership would handle only FFT-specific terms, account architecture, notice, content retention, authentication, export, migration,

13

professional damages, and equitable relief. No Track 3 expert or deposition would duplicate common work without agreement or Court approval.

### b.  Track-Specific Authority Prevents Duplication and Protects Against Conflicts

Track 3 leadership should have authority over FFT-specific allegations and classes, historical terms and assent, account and course records, notice campaigns, preservation and export protocols, migration, FFT-specific experts, professional damages, and any settlement or release affecting FFT rights. Track 1 should retain control over individual privacy, message, identity-risk, and academic-harm claims. Track 2 should retain control over institutional contract, service-level, payroll, IT, and enterprise losses.

Track placement should be claim-specific rather than person-specific. An FFT educator's privacy claim may be addressed in Track 1, the same educator's direct-account content claim in Track 3, and the institution's enterprise loss in Track 2. The tracks can implement offsets and anti-duplication rules so that no claimant recovers twice for the same injury.

Separate Track 3 participation in mediation and release drafting is essential. A broad individual-user settlement could otherwise release FFT contract, property, export, and professional-loss claims without separately valuing them. Track 3 leadership would protect those interests while coordinating a global resolution if that becomes the most efficient outcome.

### 5.  Consensus Status and Requested Action

The undersigned have conferred with counsel for Tracks 1 and 2. Counsel for Track 2 agree or do not oppose that a separate Track 3 and separate counsel for Track 3 is necessary for the efficient and effective resolution of the FFT user's claims in this case. In that same vein, the majority of Track 1 counsel agree or otherwise do not oppose a separate Track 3 with separate

counsel. The Track 1 status report states that Track 1 counsel did not reach consensus on their own leadership structure or specific appointments and propose submitting leadership applications by August 14, 2026. Track 3 does not ask the Court to resolve Track 1 leadership in this report. Track 3 agrees, if necessary, to the same application schedule and page limits for any Track 3 slate, but asks the Court to evaluate separately whether direct FFT claims require application for appointment of counsel since it is distinct track and there is only one case filed with these allegations. Whether or not unanimity has been achieved, Plaintiff respectfully submits that a narrow Educator Track 3 and a lean interim leadership structure will increase efficiency, protect distinct direct-account-holder interests, and permit earlier resolution without duplicating common work.

III.    **CONCLUSION**

Plaintiff in Track 3 therefore request that the Court recognize Track 3 for direct FFT account-holder claims; and (2) appoint separate lead counsel and liaison counsel for Track 3. The undersigned counsel intend to file, if necessary, their leadership application for Track 3 on or before the Court's August 14, 2026 deadline.

Dated: August 5, 2026                          Respectfully submitted,

                                               **FEDERMAN & SHERWOOD**

                                               By: /s/ *Jessica A. Wilkes*
                                               Jessica A. Wilkes (admitted *pro hac vice*)
                                               10205 N. Pennsylvania Avenue
                                               Oklahoma City, OK 73120
                                               Telephone: (405) 235-1560
                                               jaw@federmanlaw.com

                                               Nicholas Andrew Hall (admitted *pro hac vice*)
                                               **Hall Attorneys, PC**
                                               P.O. Box 1370

15

Edna, Texas 77957
Telephone: (713) 428-8967
nhall@hallattorneys.com

*Attorneys for Plaintiff and the Proposed*
*Track 3 Classes*

## CERTIFICATE OF SERVICE

I certify that on August 5, 2026 I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Jessica A. Wilkes*
Jessica A. Wilkes