**Exhibit 2**

**<u>Professional Relationships and Effective Collaboration (CMO No. 2 (6)(a))</u>**

I have worked well and collaboratively with counsel from many of the firms that may seek leadership appointments here. In particular, I have been in multiple leadership positions with Michelle Drake (whose law firm Berger Montague was co-counsel with mine in the *Broilers* litigation before this Court) and Gary Lynch from Lynch Carpenter. I have worked with both Ms. Drake and Mr. Lynch since 2013 when we were all in the leadership in the *Target* data breach litigation. I think these individuals would be particularly well-suited to work with me at the highest levels of leadership given their knowledge, experience, and ability to work well with others.

I recognize that many highly qualified attorneys may seek leadership roles. Based on our prior collaboration and relevant experience, other attorneys who I believe would contribute effectively to a leadership team here include: John Yanchunis, Art Murray, Sabita Soneji, Amber Schubert, Nick Hagman, Israel David, Kennedy Brian, Beana McDonald, Grayson Wells, and Maureen Brady.

I have also worked closely with the other proposed leaders of Track 2 and the potential Track 3. James Cecchi, who is seeking to serve as the Lead of Track 2, is also the Lead of Track 2 in the *PowerSchool* litigation. There, we have often coordinated on common issues and have a great working relationship. We have also been co-counsel in many other data breach cases. In addition, I have worked closely with Jessica Wilkes and Nick Hall, the proposed Co-Lead Counsel for Track 3. I am co-counsel with both Ms. Wilkes and Mr. Hall in other cases, including several that we successfully resolved.

I have discussed with proposed leadership members of Track 2 and Track 3 how the Tracks can coordinate on common liability issues, share work product where appropriate, and avoid duplicative discovery and briefing. Given our close working relationships, I believe we can achieve the same levels of coordination, efficiency, and success as we have in *PowerSchool* and other cases. Having Track leadership that work well together is critical.

Finally, although the Court has indicated a preference to have one over-arching master complaint for all three (or two) Tracks, I think it would be more efficient to have separate consolidated complaints (and Motions to Dismiss) for each Track. While there will undoubtedly be some common issues that will overlap, each Track will have significant liability issues that the others do not. Once appointed, the leadership in those Track can work with Defendants to address how to deal with any common issues in briefing (e.g., through one brief on common issues and Track-specific briefs on other issues). From my experience in *PowerSchool*, I think the individual Track issues that will arise here given the distinct theories of liability will likely overwhelm the common issues that will also be present.

### Proposed Leadership Structure and Case Specific Issues (CMO No. 2 (6)(b))

As a starting point, I would propose a lean structure informed by my experience in *PowerSchool*, while tailoring the structure to the needs of this case and the Court's preferences. As one of the Court appointed Co-Lead Counsel in *PowerSchool*, I have unique insight into how the structure there has worked well and efficiently. The Tracks have worked together to present common issues before a Special Master jointly, but also handle Track-specific issues separately, as well. *PowerSchool* is analogous here because it involved a common threat actor, a centralized educational vendor target, similar types of data exposure, and ransom/extortion tactics.

In *PowerSchool*, Judge Benitez appointed 3 Co-Leads, 6 EC members and 1 Liaison for

Track 1. *In re: PowerSchool*, Case No.: 25-md-3149-BEN-MSB, CMO No. 4 (Dkt. 221). There, the teachers are included in Track 1 as their personal data was also implicated, but they did not have distinct contract claims as they do here. As such, I support having a separate Track 3 for teachers, although we could also incorporate their claims into Track 1 if the Court does not wish to add a third Track.

Consistent with the *Manual's* caution that committees can create inefficiency, the leadership structure here should be no larger than necessary. A small group of Co-Leads, a focused Executive Committee with defined responsibilities, and one Liaison can provide accountability without creating unnecessary layers or duplicative work. In my experience, committee members are most effective when assigned concrete responsibilities under the direction of the Co-Leads — such as to assist on briefing, fact discovery, third-party discovery, experts, or settlement—and I would propose to do that here. Nearly every mega breach case (and every data breach MDL) has had leadership structures that included Co-Leads (usually at least 3), Executive Committee (or Steering Committee) members (6-10), and Liaisons (1 or 2).

I think Liaison Counsel to serve as a direct link between the Court and Co-Leads, as well as among the Tracks, would be helpful. I would propose that the Liaison be an attorney (or attorneys) located in this District who are familiar with the Court's practices and procedures.

### References (CMO No. 2 (6)(c))

At the Court's request, the following current and former federal judges have appointed Mr. Pizzirusso to leadership roles in large data-breach proceedings and are available to provide references:

- **Hon Roger T. Benitez (Ret.)** (Southern District of California) appointed James Pizzirusso as a Co-Lead in *In Re: PowerSchool Holdings, Inc. and PowerSchool Group, LLC Customer Security Breach Litigation.*, No. 25-MD-03149-BEN-MSB (S.D. Cal.) (73 million class members) (can be contacted at judgebenitez@adrservices.com). *See* personal email attached as Exhibit 3.

- **Hon. Brian C. Wimes** (Western District of Missouri) appointed James Pizzirusso as a Co-Lead in *In re: T-Mobile Customer Data Security Breach Litig.*, Case No.: 4:21-md-03019-BCW (W.D. Mo.) (70 million class members; $500 million settlement approved); and *In re: T-Mobile 2022 Customer Data Security Breach Litig.*, Case No.: 4:23-md-03073-BCW (W.D. Mo.)  (37 million class members) (can be contacted through Courtroom Deputy, Tracy Diefenbach, tracy.diefenbach@mow.uscourts.gov, (816) 512-5376)).

- **Hon. Rachel P. Kovner** (Eastern District of New York) appointed James Pizzirusso as a Co-Lead in a data breach MDL, *In Re: Perry Johnson & Associates Medical Transcription Data Security Breach Litigation*, 1:24-md-03096-RPK-LGD (E.D.N.Y.) (13 million class members) (can be contacted through Courtroom Deputy, Mr. Tsz Man Chan Tsz_Chan@nyed.uscourts.gov, (718) 613-2455)).

- **Hon. Paul W. Grimm (Ret.)** (District of Maryland) appointed James Pizzirusso as a Co-Lead in *In re: Marriott International Inc., Customer Data Security Breach Litig.*, MDL No. 19-md-2879 (D. Md.) and oversaw the initial class certification decision (340 million class members) (can be contacted at grimm@law.duke.edu).